

**U.S. Department of Justice**

*United States Attorney*
*Southern District of New York*

The Jacob K. Javits Federal Building
26 Federal Plaza, 37th Floor
New York, New York 10278

February 12, 2024

**BY ECF**

The Honorable James L. Cott
United States Magistrate Judge
United States District Court
Southern District of New York
500 Pearl Street
New York, NY 10007

  **Re:**  ***United States v. Dustin Genco*, 23 Cr. 391 (JLC)**

Dear Judge Cott:

  The Government respectfully submits this letter in advance of the sentencing of defendant Dustin Genco, who pled guilty to depriving an individual of his civil rights under color of law in connection with his assault of an arrestee in handcuffs. Sentencing is scheduled for February 22, 2024, at 10:00 a.m. For the reasons explained below, the Government submits that the Stipulated Guidelines Sentence of 12 months' imprisonment would be sufficient but not greater than necessary to serve the legitimate purposes of sentencing in this case.

**A. Factual Background**

  1. Overview

  The defendant was a Detective Investigator with the Nassau County District Attorney's Office, and a Task Force Officer ("TFO") with the United States Drug Enforcement Administration (the "DEA"). While working as a TFO, the defendant deprived a victim (the "Victim") of his constitutional right to be free from excessive force by assaulting the Victim during an arrest and causing the Victim to suffer bodily injury. Then, to cover up this conduct, the defendant failed to report the assault and, instead, falsified an official DEA report by claiming, among other things, that the Victim had continued to struggle with the defendant after being restrained in handcuffs.

  2. The Defendant Assaults the Victim

  On October 20, 2022, Genco and his partner ("Agent-1") assisted United States Marshals with executing a fugitive arrest warrant for the Victim in the Bronx, New York. (PSR ¶ 9). When law enforcement arrived to arrest the Victim, the Victim attempted to evade arrest by climbing out of his sixth-floor apartment window and down a fire escape. (*Id.*). Genco and Agent-1, who were

positioned on the ground-floor perimeter of the residence, tried to apprehend the Victim. (PSR ¶¶ 10-11). Genco and Agent-1 pursued the Victim, and Genco eventually grabbed Victim-1's person and an altercation ensued. (PSR ¶¶ 10-11). Agent-1 and Genco placed the Victim on the ground and handcuffed the Victim. (PSR ¶¶ 10, 11). Once handcuffed, the Victim stated that he could not breathe. (PSR ¶ 12). Agent-1 then positioned the Victim so that he was sitting upward with his hands cuffed behind his back. (*Id.*) The Victim was fully restrained, posed no threat to himself or others, and did not resist or attempt to flee at that time. (*Id.*). While the Victim was fully restrained and seated on the ground, Genco kicked the Victim in the chest and stomach area with full force. (PSR ¶ 13). Genco also called the Victim a "mother fucker" approximately two times while assaulting him. (*Id.*). Still images from video surveillance footage that capture the assault are depicted below, and videos of the assault are attached hereto as Exhibits A and B:

  

Following the assault, Genco circled the Victim at close range, in an apparent effort to strike the Victim again, but Agent-1 intervened and positioned herself between Genco and the Victim. (PSR ¶ 14). Still images from video surveillance footage the depict Agent-1 physically blocking Genco from the Victim are depicted below:



Following the Victim's arrest, Agent-1 and Genco escorted the handcuffed Victim to the front of the building. (PSR ¶ 16). Video surveillance footage depicts Agent-1 again distancing Genco from the Victim, in an effort to prevent Genco from further assaulting the Victim. (*Id.*).

As a result of the assault, Victim-1 experienced bruising and pain in the days following the incident. (PSR ¶ 27). On October 22, 2022, two days after the assault, the victim was hospitalized. (*Id.*). Medical records indicate that the Victim reported abdominal pain. (*Id.*). On November 29, 2022, over a month after the assault, the victim again sought treatment for abdominal pain. (PSR ¶ 28). Medical records note that the Victim suffered from "chest pain during deep inspiration." (*Id.*). The Victim was diagnosed with a form of chest inflammation, referred to as "costochondritis," that may develop from trauma or muscle strain. (*Id.*).[1]

3. Obstruction of Justice

Genco failed to report the assault to his supervisors and failed to disclose the assault in the standard DEA 6 Report of Investigation (the "Report") that Genco prepared after the Victim's arrest. (PSR ¶ 19-21). While Genco provided a detailed account of the Victim's flight and arrest, Genco made no mention of the assault in the Report, and, instead, mischaracterized the Victim as continuing to "struggle" following his arrest. (PSR ¶ 19). Moreover, even after his supervisor ("Supervisor-1") requested additional information in connection with Genco's description of the Victim's behavior during the arrest, Genco still omitted any mention of the fact that Genco had assaulted the Victim during the arrest. (PSR ¶ 20).

After law enforcement counterparts informed Supervisor-1 of the allegation that Genco had assaulted the Victim, Supervisor-1 confronted Genco about the incident. (PSR ¶ 21). Genco lied to Supervisor-1. He insisted that the Victim had been combative after he was handcuffed and had attempted to flee. (*Id.*). Genco further contended that he merely pushed the victim down with

---

[1] The Government has been informed, through counsel, that the Victim intends to provide the Government with a victim impact statement, which the Government will provide to the Court upon receipt.

his foot. (*Id.*). Genco did not deviate from his story during several subsequent conversations with Supervisor-1. (PSR ¶ 21). Yet, on November 1, 2022, Genco texted another DEA supervisor ("Supervisor-2") to inquire about potential professional ramifications from the assault. (PSR ¶ 23). On November 4, 2022, in an additional series of texts, Genco discussed the assault with another DEA supervisor ("Supervisor-3"), jokingly referring to possible administrative discipline he may face. (PSR ¶ 24).

Following the assault, Genco was removed as a DEA Task Force Officer. (PSR ¶ 25). On July 31, 2023, Genco resigned from his position with the Nassau County District Attorney's Office. (*Id.*).

### B. Procedural History

On August 2, 2023, a two-count felony Information was filed in the Southern District of New York charging Genco with depriving the Victim of his constitutional right to be free of excessive force under color of law, in violation of Title 18, United States Code, Section 242, and obstruction of justice, in violation of Title 18, United States Code, Section 1512(b)(3). (PSR ¶ 1, 2). On August 3, 2023, Genco pled guilty to a misdemeanor count of deprivation of constitutional rights under color of law, in violation of Title 18, Untied States Code, Section 242, which is the lesser included offense of Count One, before the Honorable James L. Cott, United States Magistrate Judge for the Southern District of New York. (PSR ¶ 4).

Consistent with the calculation of the United States Probation Office for the Southern District of New York, the stipulated Guidelines sentence (the "Stipulated Guidelines Sentence") in the parties' plea agreement (the "Plea Agreement"), dated July 27, 2023, is 12 months' imprisonment. (PSR ¶¶ 4, 78). The Plea Agreement provides that, pursuant to U.S.S.G. § 2H1.1(a)(3), the base offense level is 10, because the offense involved the use of force against a person; pursuant to U.S.S.G. § 2H1.1(b)(1)(B), a six-level increase applies because the offense was committed under color of law; pursuant to U.S.S.G. § 3A1.3, a two-level increase applies because the Victim was physically restrained; and pursuant to U.S.S.G. § 3C1.1, a two-level increase applies because the defendant obstructed or impeded, or attempted to obstruct or impede the investigation and prosecution of the offense. Pursuant to U.S.S.G. § 3E1.1(a) and (b), a 3-level decrease is warranted for acceptance of responsibility and timely notice of intention to enter a plea of guilty, resulting in an adjusted offense level of 17. Because Genco is in Criminal History Category I, the plea agreement provides that the resulting Stipulated Guidelines Range would be 24 to 30 months' imprisonment. However, because the statutorily authorized maximum sentence is less than the applicable Guidelines range, the Guidelines sentence becomes the statutorily authorized maximum sentence, which is 12 months' imprisonment.

### C. A Guidelines Sentence is Appropriate

#### 1. Applicable Law

As the Court is well aware, the Guidelines still provide important guidance to the Court following *United States v. Booker*, 543 U.S. 220 (2005), and *United States v. Crosby*, 397 F.3d 103 (2d Cir. 2005). Because the Guidelines are "the product of careful study based on extensive

empirical evidence derived from the review of thousands of individual sentencing decisions," *Gall v. United States*, 552 U.S. 38, 46 (2007), district courts must treat the Guidelines as the "starting point and the initial benchmark" in sentencing proceedings. *Id.* at 49. After that calculation, however, the Court must consider not only the Guidelines, but also the six other factors outlined in Title 18, United States Code, Section 3553(a): (1) "the nature and circumstances of the offense and the history and characteristics of the defendant"; (2) the four legitimate purposes of sentencing (as set forth below); (3) "the kinds of sentences available"; (4) any relevant policy statement by the Sentencing Commission; (5) "the need to avoid unwarranted sentence disparities among defendants"; and (6) "the need to provide restitution to any victims." 18 U.S.C. § 3553(a)(1)-(7); Gall, 552 U.S. at 50 & n.6. In determining the appropriate sentence, the Court must "impose a sentence sufficient, but not greater than necessary, to comply with the purposes" of sentencing, which are:

(A)     to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

(B)     to afford adequate deterrence to criminal conduct;

(C)     to protect the public from further crimes of the defendant; and

(D)     to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner.

18 U.S.C. § 3553(a)(2).

2.   Discussion

Here, the Section 3553(a) factors, and specifically, the nature and seriousness of the offense, and the need to afford adequate deterrence, and to avoid unwarranted sentencing disparities, justify a Stipulated Guidelines Sentence of 12 months' imprisonment.

*First*, Genco's conduct is undoubtedly serious. As described above, Genco abused his position of authority as a federal law enforcement officer by assaulting a person in his custody. The offense before this Court is not a mere assault – it is an assault which occurred under the color of law. Genco's assault of the Victim crossed a clear, unambiguous line: law enforcement officers know full well that once an individual is restrained – here in handcuffs – force must cease. Here Genco kicked the Victim in the chest and stomach area as the Victim sat on the ground, with his hands restrained, and his exposed chest and stomach absorbing the full impact of Genco's booted kick. As the defendant assaulted the Victim, he hurled profanities at him. Genco's assault could have proven far worse if not for the quick intervention by his fellow law enforcement officer. Agent-1 physically prevented Genco from further abusing the Victim. Nonetheless, Genco's assault resulted in significant bodily injury to the Victim, and the Victim's pain persisted for over a month after the incident.

Further, the seriousness of the offense is compounded by Genco's attempts to conceal it after the fact. Following the assault, the defendant lied about his conduct by falsely claiming that the Victim had been combative and attempting to flee after he was handcuffed. In his report of

the arrest, Genco failed to disclose the assault, and falsely claimed that the Victim was struggling after his arrest. Even after Genco was repeatedly questioned by Supervisor-1 about the nature and circumstances surrounding the arrest of the Victim, Genco doubled down on his lie and claimed that the Victim had been combative and was attempting to flee while handcuffed, and that Genco had merely attempted to subdue the Victim with his foot. These two acts combined – first, Genco's unprovoked assault, and second, his repeated lies both in his Report and directly to Supervisor-1— make this conduct particularly condemnable.

*Second*, the history and characteristics of the defendant warrant a Guidelines sentence. As part of his Plea Agreement, Genco has agreed to permanently cease and refrain from seeking or obtaining law enforcement employment. Yet, Genco's professional history reflects that this assault was no one-time aberration. Genco has previously been the subject of several substantiated Civilian Complaint Review Board incidents ("CCRBs") related to the use of force or threatened use of force, in 2001, 2004, 2006, and 2007, including the use of force towards a handcuffed suspect.[2] In 2001, a CCRB complaint filed against Genco claimed, among other things, that he (1) used physical force and hit the complainant against a vehicle; (2) spoke rudely to the complainant; and (3) searched the complainant even though he was no longer under arrest. The CCRB found that each of these claims was substantiated. Similarly, in 2004, a CCRB complaint filed against Genco claimed, among other things, that he: (1) abused his authority and used excessive force by stopping, frisking and searching the complainant at gunpoint without reasonable suspicion; and (2) refused to provide his name and badge upon request. The CCRB found that each of these claims was substantiated. A CCRB complaint filed against Genco in 2005 and found substantiated in 2006 claimed, among other things, that he threatened to use and used force against the complainant by striking him on the side of the head with an open hand even though the complainant was handcuffed and did not pose a threat to then-Detective Genco. The CCRB found that each of these claims was substantiated. Finally, in 2007, a jointly filed CCRB complaint filed against Genco claimed, among other things, that while off-duty, he (1) threatened to arrest one complainant even though he had no probable cause to arrest her; and (2) used discourteous language against both complainants during the incident. The CCRB found that both of these claims were substantiated.

Genco's communications with supervisors after the instant offense highlight his casual attitude about his misconduct. Once Genco realized that his misconduct was possibly detected, Genco made no effort to either correct the misstatements made to Supervisor-1 and in his report. What's more, he jokingly referred to the incident in communications with other supervisors, including about administrative discipline he may receive. The defendant's history of professional misconduct – including repeated substantiated findings of his use of excessive force and his dismissive treatment of his misconduct in this case reflects the need for a custodial sentence in this case.

*Third*, the need for general deterrence weighs in favor of the Court imposing the Stipulated Guidelines Sentence. There is a significant need to deter other law enforcement officers from abusing their positions of authority in a similar manner. Violent acts committed under color of

---

[2] Genco was subsequently found not guilty of the 2001, 2004, and 2006 claims after an administrative trial before the NYPD's disciplinary court.

law undermine the legitimacy of our criminal justice system. While the job of a federal officer is difficult, with many challenges, including sometimes to the officer's own safety, the power imbalance inherent in the relationship between federal officer and those in their custody demands strict compliance with the rule of law. Otherwise, the power dynamic is rife with opportunity to exploit authority in unlawful ways. Moreover, when law enforcement officers are not held to account, it corrodes the public trust, faith in law enforcement, and faith in the rule of law itself. Here, the defendant's conduct was captured on surveillance video. But often such conduct occurs off camera and out of view of the Court and the public. Thus, where such conduct is detected, and proven, it is critically important to send a message to both would-be abusers and to the public that such offenses will not be tolerated.

Finally, the need to avoid unwarranted sentencing disparities also merits a Guidelines sentence. The Second Circuit has recognized the "compelling public interest in deterring and adequately punishing those who violate civil rights under color of law." *United States v. Hershkowitz*, 968 F.2d 1503, 1505 (2d Cir. 1992) (quoting prior commentary of the Guidelines). Other courts in this District consistently reach the same conclusion in imposing custodial Guidelines sentences for civil rights violations. *See, e.g.*, *United States v. Akparanta*, No. 19 Cr. 363 (LGS), Dkt. No. 61 (S.D.N.Y. Dec. 8, 2020) (sentencing former correction officer at the Metropolitan Correction Center to 40 months' imprisonment following conviction to Section 242 offense, where Guidelines range was 37 to 46 months' imprisonment); *Calypso*, No. 17 Cr. 224 (VEC), Dkt. 69 (sentencing former correction officer at Rikers Island to 16 months' imprisonment following conviction to Section 1519 offense, where Guidelines range was 15 to 21 months' imprisonment); *United States v. Santiago*, No. 16 Cr. 626 (KMK) (S.D.N.Y. July 23, 2018) (sentencing former correction officer at Downstate Correctional Facility to 87 months' imprisonment following conviction to Section 242 and 1519 offenses, where Guidelines range was 87 to 108 months' imprisonment); *United States v. Coll*, No. 15 Cr. 360 (LAP), Dkt. No. 134 (S.D.N.Y. Sept. 13, 2017) (sentencing former correction officer at Rikers Island to 360 months' imprisonment following conviction to Section 1519 and 242 offenses, among others, where Guidelines range was 324 to 402 months' imprisonment); *United States v. Pendergrass*, No. 14 Cr. 329 (RA), Dkt. No. 106 (S.D.N.Y. May 21, 2015) (sentencing former Rikers Island correction officer to 60 months' imprisonment following conviction to Section 242 offense, where Guidelines range was 21 to 27 months' imprisonment); *see also United States v. Palkowitsch*, 36 F.4th 796, 799 (8th Cir. 2022) (affirming 72-months sentence for police officer following conviction to Section 242 offense, where Guidelines range was 87 to 108 months' imprisonment, where officer kicked an individual who had been attempting to flee, but was later restrained by a canine dog, three times in the chest resulting in broken ribs and two collapsed lungs); *United States v. Boone,* 110. F. Supp. 3d 909, 917 (S.D. Iowa 2015) (sentencing police officer to 63-months' imprisonment following conviction to Section 242 offense, where Guidelines range was 63 to 78 months' imprisonment, where defendant kicked a restrained arrestee in the mouth).

These cases from the Second Circuit are in- line with national sentencing data as well. For instance, in the year 2022, for sentences where the primary Guideline was as here, U.S.S.G. 2H1.1, the national median sentence was 26 months' imprisonment. In 2021, the national median was similarly 24 months' imprisonment. Notably, these sentences would not account for color of law offenses where the underlying conduct would trigger a cross-reference to another Guideline with

a higher base offense level (*e.g.* cases involving an aggravated assault, homicide, or forcible sexual assault).

In sum, the seriousness of the offense, the defendant's personal history and characteristics – including a history of excessive force allegations – as well as the need for deterrence and the need to avoid unwarranted sentencing disparities all weigh in favor of a Guidelines sentence. The defendant's proposal, and Probation's recommendation, of a non-custodial sentence is simply insufficient to adequately reflect these necessary considerations.

### D. Conclusion

For the reasons set forth above, the Government respectfully requests that the Court impose the Stipulated Guidelines Sentence of one year' imprisonment. Such a sentence is necessary to serve the legitimate purposes of sentencing.

Respectfully submitted,

DAMIAN WILLIAMS
United States Attorney

By: /s/_____
     Mitzi S. Steiner
     Assistant United States Attorney
     (212) 637-2284

cc:    Jim Walden, Esq. (by ECF)