N82KGENP

1 UNITED STATES DISTRICT COURT
  SOUTHERN DISTRICT OF NEW YORK
2 ------------------------------x

3 UNITED STATES OF AMERICA,

4             v.                        23 CR 391 (JLC)

5 DUSTIN GENCO,

6                                       Plea
               Defendant.
7 ------------------------------x

8
                                    New York, N.Y.
9                                   August 2, 2023
                                    12:10 p.m.
10

11 Before:

12                   HON. JAMES L. COTT,

13                                      U.S. Magistrate Judge

14                      APPEARANCES

15 DAMIAN WILLIAMS
        United States Attorney for the
16      Southern District of New York
   ALEXANDRA ROTHMAN
17 JACQUELINE KELLY
        Assistant United States Attorneys
18
   WALDEN MACHT & HARAN LLP
19      Attorneys for Defendant
   BY:  JIM WALDEN
20      IVY YAO

21 Also Present:

22 Viosanny Harrison, Pretrial
   Christina Venable, Pretrial
23 Stephen Orloff, DOJ, Office of Inspector General

24

25

1                (Case called)

2                MS. ROTHMAN:  Good afternoon, your Honor.  Alexandra

3    Rothman and Jacqueline Kelly, for the United States.  We're

4    joined at counsel table by Stephen Orloff, a special agent with

5    the Department of Justice, Office of the Inspector General.

6                THE COURT:  Good afternoon to all of you.

7                MR. WALDEN:  Hi, Judge.  Jim Walden and Ivy Yao, for

8    Mr. Genco.

9                THE COURT:  Good afternoon to both of you; good

10   afternoon, Mr. Genco.

11               THE DEFENDANT:  Good afternoon, your Honor.

12               THE COURT:  Okay.  Let me get all my paperwork in

13   order here.

14               I think the first order of business is that I have a

15   consent to proceed before a magistrate judge in a misdemeanor

16   case form.  This says, Mr. Genco, that a United States

17   magistrate judge has explained to me the nature of the charges

18   against me and the maximum penalty that may be imposed on each

19   charge if I am found guilty.  The magistrate judge has also

20   informed me of my right to a lawyer, my right to a jury trial,

21   and my right to be tried, judged, and sentenced before either a

22   United States district judge or a United States magistrate

23   judge.  And you're consenting to be tried before a United

24   States magistrate judge, and you're waiving your rights to

25   trial, judgment, and sentencing by a United States district

1    judge.

2           Did Mr. Walden and his colleague go over this form

3    with you?

4           THE DEFENDANT:  Yes, your Honor.

5           THE COURT:  All right.

6           And I am going to, during the course of this

7    proceeding this afternoon, review with you all of the various

8    rights that are here, so I will come back and reconfirm this

9    consent.  But I wanted you to just understand, as we start, I

10   think today what we're going to do is have what we call an

11   initial appearance, or a presentment, here, and arraignment on

12   the information, a waiver of indictment, because there is an

13   information and not an indictment in this case, and then, as I

14   understand it, a plea to at least part of the information, and

15   then after that, we'll discuss whether there are bail

16   conditions to be set.

17          Ms. Rothman, is that order of proof acceptable to the

18   government?

19          MS. ROTHMAN:  Yes, your Honor.  Thank you.

20          THE COURT:  Mr. Walden, acceptable as well?

21          MR. WALDEN:  Yes, your Honor.

22          THE COURT:  Okay.  Very well.

23          MR. WALDEN:  Your Honor, may I just ask one question?

24          THE COURT:  Yes, sir.

25          MR. WALDEN:  In deference to the Court, I read some of

N82KGENP

1    your prior plea proceedings, and it seems like you want the

2    parties seated during the entire thing.  Is that accurate, your

3    Honor?

4             THE COURT:  There is one part of the proceeding where

5    I'm going to ask the defendant to stand, when I put him under

6    oath, but, otherwise, you can all remain seated.

7             When counsel wants to be heard, though, you should

8    stand, as you would normally.

9             MR. WALDEN:  Thank you, your Honor.

10            THE COURT:  Okay.

11            First of all, just for the record, Ms. Rothman, let me

12   ask you what the date and time of arrest or surrender was

13   today?

14            MS. ROTHMAN:  Your Honor, the defendant surrendered

15   this morning, at approximately 9:00 a.m., here to the

16   courthouse.

17            THE COURT:  All right.

18            So, Mr. Genco, let me begin by informing you of

19   certain rights that you have.

20            First of all, you have the right to remain silent.

21   You are not required to make any statements to the authorities.

22   Anything that you say can be used against you.  If you have

23   made any statements in the past, you still have the right to

24   remain silent going forward.

25            You also have the right to be represented by an

1    attorney at all proceedings.  If you can't afford an attorney,

2    you have the right to request that the Court appoint one for

3    you.  I understand that Mr. Walden and his colleague are

4    retained counsel.

5            Is that correct?

6            MR. WALDEN:  Pro bono, your Honor, yes.

7            THE COURT:  All right.  Very well.

8            Now, you also have the right to consular notification,

9    if it applies to you.  What that means is, if you're a citizen

10   of another country, I may request that a government attorney or

11   a federal law enforcement official notify a consular officer

12   from your country that you have been arrested.  Even without

13   such a request, there may be an international agreement

14   requiring such notification.

15           If you are a United States citizen, then, of course,

16   this would not apply to you, but, by law, I'm required to tell

17   all defendants at the initial appearance in court of this right

18   to consular notification, if it was to apply to them.

19           Now, I have the charging instrument in this case.  It

20   is an information.  In Count One, it charges the defendant with

21   deprivation of rights under color of law, and in Count Two, it

22   charges the defendant with obstruction of justice.

23           Mr. Walden, have you received a copy of the

24   information?  And have you reviewed it with Mr. Genco?

25           MR. WALDEN:  I have, your Honor.

1           THE COURT:  And do you waive a public reading?

2           MR. WALDEN:  Yes, sir.

3           THE COURT:  All right.

4           I think, in the order of proceedings here, why don't I

5   arraign the defendant on the information.

6           How does he wish to plead at this time with respect to

7   the information?

8           MR. WALDEN:  Not guilty, your Honor.

9           THE COURT:  All right.  Very well.

10          Now, normally, in the course of an initial proceeding,

11  we would next address the question of bail conditions, but it

12  seems to me more appropriate to address that later in the

13  proceeding.

14          Does the government have any objection to deferring

15  that?

16          MS. ROTHMAN:  No, your Honor.

17          THE COURT:  Mr. Walden?

18          MR. WALDEN:  None, your Honor.

19          THE COURT:  All right.

20          Is there anything else, counsel, you think we need to

21  do by way of the initial appearance in this case before we

22  proceed?

23          MS. ROTHMAN:  No, your Honor.  Thank you.

24          MR. WALDEN:  No, your Honor.

25          THE COURT:  Very well.

1          Now, my understanding is that we are going to now

2     proceed on the plea agreement unless the parties tell me there

3     is anything else preliminarily we need to do.

4          Ms. Rothman?

5          MS. ROTHMAN:  Your Honor, the only thing I would note

6     is I believe the Court should advise the defendant and the

7     government of Rule 5(f) of the Federal Rules of Criminal

8     Procedure with respect to the government's obligations --

9          THE COURT:  I'm planning to do that as part of the

10    plea proceeding, if you will.

11         MS. ROTHMAN:  That's fine, your Honor.  Thank you.

12         THE COURT:  Okay.

13         Mr. Walden, anything else preliminarily you think we

14    need to address?

15         MR. WALDEN:  No, sir.

16         THE COURT:  Okay.

17         Just to go back to the consent form, Mr. Genco, that I

18    mentioned, you are consenting at this time to have your plea

19    taken here in Magistrate's Court before me, a United States

20    magistrate judge; is that correct?

21         THE DEFENDANT:  Yes, your Honor.

22         THE COURT:  And you have discussed that with your

23    counsel?

24         THE DEFENDANT:  Yes, your Honor.

25         THE COURT:  And you understand by consenting to my

1   taking the plea, because you are pleading guilty to a

2   misdemeanor, you're consenting that I take your plea for all

3   purposes, and that I will be the judge who will be sentencing

4   you down the road?

5           Do you understand that?

6           THE DEFENDANT:  Yes, your Honor.

7           THE COURT:  And you agree to that?

8           THE DEFENDANT:  Yes, your Honor.

9           THE COURT:  Okay.

10          Anything else either side thinks I need to ask with

11  respect to the consent here?

12          MS. ROTHMAN:  Your Honor, I imagine the Court is going

13  to get to this, but at some point, I think the defendant should

14  also waive indictment.

15          THE COURT:  I'll get to all of that.

16          MS. ROTHMAN:  Thank you, your Honor.

17          MR. WALDEN:  Nothing, your Honor.

18          THE COURT:  Okay.

19          So, the purpose of the proceeding at this point,

20  Mr. Genco, is to make sure that you understand all of your

21  rights, to decide whether you are going to be pleading guilty

22  of your own free will, and to make sure you're pleading guilty

23  because you are guilty and not for some other reason.

24          Do you understand that?

25          THE DEFENDANT:  Yes, your Honor.

1          THE COURT:  If at any time, you don't understand any

2     of the questions I'm going to be asking you as part of this

3     plea proceeding, or if you wish to consult with your attorneys,

4     please let me know because it is very important that you

5     understand every question before you answer.

6          Okay?

7          THE DEFENDANT:  Yes, your Honor.

8          THE COURT:  Now, before I take your plea, as I say,

9     I'm going to be asking you a series of questions, and,

10    therefore, I need to place you under oath.  So at this time,

11    will you please stand and raise your right hand.

12         (Defendant sworn)

13         THE COURT:  Do you understand that any statements that

14    you make here today under oath may be used against you in a

15    prosecution for perjury or for making false statements if you

16    do not tell the truth?

17         THE DEFENDANT:  Yes, your Honor.

18         THE COURT:  You may be seated.

19         Now, pursuant to Rule 5(f) of the Federal Rules of

20    Criminal Procedure, to which Ms. Rothman adverted a few moments

21    ago, as an initial matter, I am directing the prosecution to

22    comply with its obligation under *Brady v. Maryland* and its

23    progeny to disclose to the defense all information, whether

24    admissible or not, that is favorable to the defendant, material

25    either to guilt or to punishment and known to the prosecution.

1   Possible consequences for noncompliance may include dismissal

2   of individual charges or the entire case, exclusion of

3   evidence, and professional discipline or court sanctions on the

4   attorneys responsible.

5          I'll be entering a written order more fully describing

6   this obligation and the possible consequences of failing to

7   meet it, and I direct the prosecution to review and comply with

8   that order.

9          That being said, I do note that it is possible for a

10  defendant to give up the right to complain about *Brady*

11  violations in a plea agreement.

12         Does the prosecution confirm that it understands its

13  obligations and will fulfill them or have fulfilled them?

14         MS. ROTHMAN:  Yes, your Honor.

15         THE COURT:  All right.

16         I think the next order of business is a waiver of

17  indictment, which I have here before me.

18         Mr. Genco, did you sign this waiver of indictment?

19         THE DEFENDANT:  Yes, your Honor.

20         THE COURT:  Before you signed it, did you discuss it

21  with Mr. Walden?

22         THE DEFENDANT:  Yes, your Honor.

23         THE COURT:  Do you understand what you are doing by

24  signing a waiver of indictment?

25         THE DEFENDANT:  Yes, your Honor.

1          THE COURT:  Do you understand that you're under no

2     obligation to waive indictment?

3          THE DEFENDANT:  Yes, your Honor.

4          THE COURT:  Do you understand that if you do not waive

5     indictment, if the government wants to prosecute you, they

6     would have to present this case to a grand jury, which may or

7     may not indict you?

8          THE DEFENDANT:  Yes, your Honor.

9          THE COURT:  Do you realize that by signing this waiver

10    of indictment, you've given up your right to have this case

11    presented to a grand jury?

12          THE DEFENDANT:  Yes, your Honor.

13          THE COURT:  Do you understand what a grand jury is?

14          THE DEFENDANT:  Yes, your Honor.

15          THE COURT:  Have you seen a copy of the information?

16          THE DEFENDANT:  Yes, your Honor.

17          THE COURT:  Do you waive a public reading of the

18    information?

19          THE DEFENDANT:  Yes, your Honor.

20          THE COURT:  How do you wish to plead to the

21    information at this time, guilty or not guilty?

22          THE DEFENDANT:  Not guilty.

23          THE COURT:  All right.

24          Now, Mr. Genco, could you please tell the Court your

25    full name?

1          THE DEFENDANT:  Dustin Genco.

2          THE COURT:  How old are you, sir?

3          THE DEFENDANT:  Fifty-one years old.

4          THE COURT:  Are you a citizen of the United States?

5          THE DEFENDANT:  Yes, your Honor.

6          THE COURT:  Are you able to read and write in English?

7          THE DEFENDANT:  Yes, your Honor.

8          THE COURT:  How far did you go in school?

9          THE DEFENDANT:  High school.

10          THE COURT:  Are you now, or have you recently been,

11  under the care of a doctor or a psychiatrist for any reason?

12          THE DEFENDANT:  No, your Honor.

13          THE COURT:  Have you been treated recently for any

14  mental illness or addiction to alcohol or narcotic drugs of any

15  kind?

16          THE DEFENDANT:  No, your Honor.

17          THE COURT:  As you sit here today, are you under the

18  influence of any mind-altering drug or any alcoholic drink?

19          THE DEFENDANT:  No, your Honor.

20          THE COURT:  Are you on any medication?

21          THE DEFENDANT:  Just cholesterol and high blood

22  pressure.

23          THE COURT:  All right.

24          Have you been able to understand everything that I've

25  said to you so far?

1            THE DEFENDANT:  Yes, your Honor.

2            THE COURT:  Do you feel all right today?

3            THE DEFENDANT:  Yes, your Honor.

4            THE COURT:  You said you've seen a copy of the

5    information in this case?

6            THE DEFENDANT:  Yes, your Honor.

7            THE COURT:  And you've read it?

8            THE DEFENDANT:  Yes, your Honor.

9            THE COURT:  Do you understand what it says that you

10   did?

11           THE DEFENDANT:  Yes, your Honor.

12           THE COURT:  Have you had a chance to discuss the

13   charges in the information and how you wish to plead with your

14   attorneys?

15           THE DEFENDANT:  Yes, your Honor.

16           THE COURT:  Are you satisfied with their

17   representation of you?

18           THE DEFENDANT:  Yes, your Honor.

19           THE COURT:  Have you had a full opportunity to discuss

20   this case with them?

21           THE DEFENDANT:  Yes, your Honor.

22           THE COURT:  Have they told you the consequences of

23   pleading guilty?

24           THE DEFENDANT:  Yes, your Honor.

25           THE COURT:  Are you ready to enter a plea at this

1    time?

2              THE DEFENDANT:  Yes, your Honor.

3              THE COURT:  All right.

4              My understanding, from the plea agreement, is that

5    you're going to be entering a plea to the lesser included

6    offense of a misdemeanor deprivation of constitutional rights

7    under color of law, in violation of federal law.

8              Ms. Rothman, just to confirm, is that the government's

9    intention here?

10             MS. ROTHMAN:  Yes, your Honor.

11             THE COURT:  All right.

12             Mr. Walden, that's what's understood?

13             MR. WALDEN:  Yes, sir.

14             THE COURT:  All right.

15             So let me review fully with you, Mr. Genco, the lesser

16   included charge and the penalties that are associated with that

17   charge.

18             Under the terms of the plea agreement with the

19   government, the government will be accepting a guilty plea to

20   the lesser included offense of a misdemeanor deprivation of

21   constitutional rights under color of law, in violation of

22   federal law.  And this charge carries a maximum term of

23   imprisonment of one year, a maximum term of supervised release

24   of one year, a maximum fine pursuant to federal law of the

25   greatest of $100,000, twice the gross gain derived from the

1    offense, or twice the gross pecuniary loss to persons other

2    than you resulting from the offense, and a $25 mandatory

3    special assessment.

4         In addition, the Court must order restitution, as is

5    specified in the agreement, and I will follow up with that in a

6    minute.

7         But do you understand the lesser included charge and

8    the penalties that are associated with that charge?

9         THE DEFENDANT:  Yes, your Honor.

10        THE COURT:  How do you wish to plead to the lesser

11   included charge, guilty or not guilty?

12        THE DEFENDANT:  Guilty.

13        THE COURT:  Now, in the agreement, it indicates that

14   you are admitting that, after the assault that is referred to

15   in the agreement, you informed your supervisor, in sum and

16   substance, that the victim was combative and resisting arrest

17   at the time of the assault, the victim was attempting to get up

18   and flee at the time of the assault, and the defendant pushed

19   the victim down with your foot.

20        Is that correct?  Are you admitting to that as part of

21   the plea?

22        THE DEFENDANT:  Yes, your Honor.

23        THE COURT:  All right.

24        To be clear — and I know the record will be more fully

25   developed about this — when we're referring to "the victim,"

1  this is with respect to the October 20, 2022 arrest of the

2  victim in the Bronx, just so that the record is crystal clear

3  on that point.

4          Is that correct?

5          THE DEFENDANT:  Yes, your Honor.

6          THE COURT:  Okay.

7          And I think, as I mentioned a minute or two ago, you

8  are agreeing to make restitution to the victim in an amount

9  that is going to be ordered by the Court.  Do you understand

10 that?

11         THE DEFENDANT:  Yes, your Honor.

12         THE COURT:  Ms. Rothman, are there other questions you

13 want me to ask the defendant about the charge and the penalties

14 associated with them at this time, understanding that there

15 will be further questions about the sentencing range and all of

16 that going forward?

17         MS. ROTHMAN:  Not with respect to the two categories

18 your Honor identified.

19         THE COURT:  Okay.

20         Mr. Walden, anything else you think needs to be put on

21 the record in this regard?

22         MR. WALDEN:  No, your Honor.

23         THE COURT:  Okay.

24         Do you understand, Mr. Genco, that if, as part of your

25 sentence, you're placed on a term of supervised release, and

1  then you were to violate any of the conditions of that release,

2  you could face an additional term of imprisonment?

3          THE DEFENDANT:  Yes, your Honor.

4          THE COURT:  Now, you told me earlier that you're a

5  citizen of the United States.  By law, I must still tell you

6  that if, in fact, it turned out that you were not a United

7  States citizen, a guilty plea means you may be removed from the

8  United States and denied admission to the United States or

9  citizenship in the future.

10         Do you understand that?

11         THE DEFENDANT:  Yes, your Honor.

12         THE COURT:  Do you understand you're bound by your

13  guilty plea regardless of the immigration consequences of your

14  plea and regardless of any advice you have received from your

15  attorney or anyone else, for that matter, regarding those

16  consequences?

17         THE DEFENDANT:  Yes, your Honor.

18         THE COURT:  Have you discussed this issue, the

19  immigration consequences, with your attorney, even if it means

20  to confirm that because you're a citizen, it wouldn't otherwise

21  apply to you?

22         THE DEFENDANT:  Yes, your Honor.

23         THE COURT:  Okay.

24         Mr. Genco, at this time, I want to explain certain

25  constitutional rights that you have.  These are rights,

1    however, that you will be giving up by entering a guilty plea.

2              First of all, do you understand that you have a right

3    to plead not guilty to the charge in the information and a

4    right to a speedy and public jury trial if you wish?

5              THE DEFENDANT:  Yes, your Honor.

6              THE COURT:  Do you understand that if you were to

7    plead not guilty and go to trial, you would be presumed

8    innocent, and the burden would be on the government to prove

9    your guilt beyond a reasonable doubt?

10             THE DEFENDANT:  Yes, your Honor.

11             THE COURT:  Do you understand that you're entitled to

12   be represented by an attorney at all stages — at trial and at

13   every other stage of the proceedings — and if you could not

14   afford to hire or retain an attorney, the Court would provide

15   an attorney to you for free?

16             THE DEFENDANT:  Yes, your Honor.

17             THE COURT:  Do you understand that if there were a

18   trial in your case, you would be entitled to confront and

19   cross-examine any witnesses called by the government to testify

20   against you?

21             THE DEFENDANT:  Yes, your Honor.

22             THE COURT:  Do you understand you would be entitled to

23   testify on your own behalf?

24             THE DEFENDANT:  Yes, your Honor.

25             THE COURT:  Do you understand you could call witnesses

N82KGENP

1    and present evidence?

2           THE DEFENDANT:  Yes, your Honor.

3           THE COURT:  Do you understand that you could ask the

4    Court to issue subpoenas to compel witnesses to appear and

5    testify in your defense, even if they did not otherwise wish to

6    come to court?

7           THE DEFENDANT:  Yes, your Honor.

8           THE COURT:  Do you understand that if there were a

9    trial in the case, you would not be required to testify against

10   yourself?

11          THE DEFENDANT:  Yes, your Honor.

12          THE COURT:  And do you understand if you chose not to

13   testify, that fact could not be used against you?

14          THE DEFENDANT:  Yes, your Honor.

15          THE COURT:  Do you also understand that if you went to

16   trial, and you were convicted at the trial, you would still

17   have the right to appeal that conviction to a higher court?

18          THE DEFENDANT:  Yes, your Honor.

19          THE COURT:  Do you understand that by entering a

20   guilty plea here today, you will be giving up all of the rights

21   I've just reviewed with you, including your right to a trial,

22   that you will not be able to withdraw your plea of guilty, and

23   that the only remaining step in this case will be the

24   sentencing?

25          THE DEFENDANT:  Yes, your Honor.

1          THE COURT:  And do you understand that the decision as

2     to the appropriate sentence in your case will be entirely up to

3     the sentencing judge, who, in this case, because of the consent

4     that you have signed, will be me, and that I will be limited

5     only by what the law requires?

6          THE DEFENDANT:  Yes, your Honor.

7          THE COURT:  Do you understand that even if you are

8     surprised or disappointed by your sentence, you are still going

9     to be bound by your guilty plea?

10          THE DEFENDANT:  Yes, your Honor.

11          THE COURT:  Knowing everything I've just reviewed with

12     you, do you still wish to plead guilty to the lesser included

13     offense to Count One of the information?

14          THE DEFENDANT:  Yes, your Honor.

15          THE COURT:  Has any force or any threats of force been

16     used to influence how you plead today?

17          THE DEFENDANT:  No, your Honor.

18          THE COURT:  Now, I have before me a letter that's

19     dated July 27, 2023, from the government to your attorney,

20     Mr. Walden, containing a plea agreement.

21          Have you read this letter?

22          MR. WALDEN:  Your Honor, I'm sorry, I'm going to put

23     it in front of him, but I have the wrong one in front of me.

24          THE COURT:  All right.

25          MR. WALDEN:  You have my copy.

N82KGENP

1          (Pause)

2          MR. WALDEN:  Thank you.

3          Sorry, Judge.

4          THE COURT:  That's all right.

5          So I have the July 27, 2023 letter in front of me.

6          Have you read this letter?

7          THE DEFENDANT:  Yes, your Honor.

8          THE COURT:  Did you sign it on the last page?

9          THE DEFENDANT:  Yes, your Honor.

10          THE COURT:  Before you signed it, did you discuss it

11   with your attorneys?

12          THE DEFENDANT:  Yes, your Honor.

13          THE COURT:  And did they explain to you all of its

14   terms and conditions?

15          THE DEFENDANT:  Yes, your Honor.

16          THE COURT:  Apart from what is contained in this

17   letter, have any promises been made to you in order to get you

18   to plead guilty?

19          THE DEFENDANT:  No, your Honor.

20          THE COURT:  Now, in reviewing the agreement, I note —

21   and this is on page 3 — it contains an analysis of how part of

22   our law of sentencing, known as the sentencing guidelines, may

23   impact on any prison term in your case.  Based on that

24   analysis, the agreement states the following conclusion:  That

25   the stipulated guideline range would be 24 to 30 months in

1    prison; however, because the statutorily authorized maximum

2    sentence is less than that applicable guideline range, the

3    guideline sentence becomes the statutorily authorized maximum

4    sentence, which, in this case, is 12 months' imprisonment.

5            To translate that into plain English, you're facing a

6    maximum of 12 months in prison.

7            Do you understand that?

8            THE DEFENDANT:  Yes, your Honor.

9            THE COURT:  Okay.

10           Do you understand that I, as the sentencing judge,

11   will not be bound by the calculation in the letter, I'll be

12   free to do my own calculation, which might result in a

13   guideline range that's different from what's in the letter?

14           THE DEFENDANT:  Yes, your Honor.

15           THE COURT:  Do you understand that no matter what

16   sentencing range I believe is called for by the guidelines,

17   that range is just one of many factors that I will consider in

18   determining your sentence, and that I have the discretion to

19   give you a prison sentence below or up to twelve months, so it

20   could be from zero to twelve months or anything in between.

21           Do you understand that?

22           THE DEFENDANT:  Yes, your Honor.

23           THE COURT:  Okay.

24           Do you also understand that under the terms of the

25   agreement, if I were to sentence you to a term that is

1  12 months or less, you're giving up your right to appeal that

2  sentence or to appeal it or challenge it in any other way, such

3  as through a writ of habeas corpus?

4           THE DEFENDANT:  Yes, your Honor.

5           THE COURT:  Now, it also says that — and this is on

6  the bottom of page 4 — you cannot appeal any fine that is less

7  than or equal to $95,000, and that you cannot appeal any lawful

8  sentence of supervised release.

9           Do you understand that?

10          THE DEFENDANT:  Yes, your Honor.

11          THE COURT:  Do you also understand that in this

12  letter, you're giving up your right to complain if the

13  government withheld evidence from your attorneys that would

14  have been helpful to you?

15          THE DEFENDANT:  Yes, your Honor.

16          THE COURT:  Now, Mr. Genco, is your plea voluntary?

17  And what I mean by that, is it made of your own free will?

18          THE DEFENDANT:  Yes, your Honor.

19          THE COURT:  Did you, in fact, commit the lesser

20  included offense that is charged in Count One of the

21  information?

22          THE DEFENDANT:  Yes, your Honor.

23          THE COURT:  Before I ask you to tell the Court what

24  you did, I'm going to ask the government to summarize the

25  elements of the offense and, if it wishes, to advise the Court

1   what the evidence would have been had there been a trial in

2   your case.

3           Ms. Rothman?

4           MS. ROTHMAN:  Thank you, your Honor.

5           As the Court noted, the defendant is pleading guilty

6   to a lesser included offense of Count One, which charges him

7   with a violation of 18 U.S.C. 242, for deprivation of rights

8   under color of law.

9           The elements are the following:

10          First, the defendant acted under color of law;

11          Second, the defendant deprived the victim of a right

12  protected by the Constitution or the laws of the United States.

13  Here, it is a right protected under the Fourth Amendment, to be

14  free from unreasonable force during an arrest;

15          And, third, the defendant acted willfully when he

16  deprived the victim of his constitutional right.  By that, the

17  defendant knew what he was doing was wrong, but did it anyway.

18          The government would also prove that venue is proper

19  in the Southern District of New York, and that would be by a

20  preponderance of the evidence.

21          As to the government's proof, your Honor, had this

22  case gone to trial, the government would have proven beyond a

23  reasonable doubt that the defendant used excessive force

24  against the victim during the victim's arrest, and then lied to

25  a supervisor about his use of force thereafter.

1    The evidence would include the following, among other

2 things:  Video surveillance of the defendant's assault of the

3 victim.  That video shows the victim handcuffed and then being

4 assisted to a seated position by another law enforcement agent.

5 The defendant then walks away from the victim and turns back

6 and kicks the victim straight to his chest and stomach area

7 while the victim is fully restrained in handcuffs.

8    That video also shows the defendant stepping towards

9 the victim repeatedly thereafter as the other agent on-scene

10 stands in between the defendant and the victim.

11    The government's evidence would also include testimony

12 from the victim, medical records of the victim, testimony of

13 other law enforcement officers.  That testimony would establish

14 the defendant lied when he was asked about the events of the

15 assault.  Among other things, and as agreed to in the plea

16 agreement, the defendant falsely stated the victim continued to

17 resist arrest after being handcuffed, the victim tried to get

18 up while he was handcuffed, and the defendant only pushed the

19 victim with his foot.  And all of those statements were false.

20    The government would also offer into evidence DEA

21 training materials the defendant received and reviewed as part

22 of his work as a task force officer, reports prepared by the

23 defendant after the arrest that omitted any reference to the

24 assault, and, finally, text messages from the defendant after

25 the incident, in which he, among other things, joked that he

1    was going to have to go to training after assaulting the

2    victim.

3              THE COURT:  All right.  Thank you, Ms. Rothman.

4              Mr. Genco, at this time, would you please tell the

5    Court, in your own words, what you did that makes you guilty of

6    the charge to which you're pleading guilty.  If you're going to

7    read a statement, which is fine, just make sure you speak into

8    the microphone and read slowly so that the court reporter is

9    able to transcribe what you're saying.

10             THE DEFENDANT:  On October 20, 2022, I was assigned to

11   a fugitive arrest detail for a known fentanyl dealer who I

12   previously arrested.  I was assigned to cover the back of the

13   building and was not part of the primary arrest team.  My team

14   was short-staffed that day.  My only partner was a female, who

15   was much smaller than me.  We saw the suspect trying to escape

16   out the sixth story window.  I ran up the stairs to arrest him.

17   He assaulted me, and he almost knocked me off the stairs, which

18   the ground was about 20 to 30 feet below me.  This really

19   rattled me.

20             I gave chase.  I did not draw my weapon.  I fought him

21   with my hands.  We eventually got him under control.  My

22   partner was trying to place cuffs securely on him as he was

23   seated or nearly on the ground.

24             I thought he was continuing yelling at me, and I don't

25   speak Spanish, and I was very charged.  So I thought he was

1    taunting me.  I later learned that he was apologizing, and I

2    feel terrible about that.

3            But in the moment, I was exhausted, out of breath, and

4    I think I lost my temper.  I kicked him once in the chest.  At

5    the time, I didn't think I kicked him very hard since he didn't

6    even fall over.

7            I never reviewed the video, but I understand that it

8    looks like I kicked him pretty hard.  I didn't mean to hurt

9    him.  I think I was just trying to get him to shut up and

10   comply to my instructions.

11           Kicking him was wrong, it was unnecessary, and I'm

12   sorry I did it.

13           It took all of a second, and I wish I could take that

14   second back.

15           That's all, your Honor.

16           THE COURT:  All right.

17           The government proffered that you kicked the victim

18   when he was restrained.  Is that correct?

19           THE DEFENDANT:  Yes, yes, your Honor.

20           THE COURT:  All right.

21           And that occurred in the Bronx --

22           THE DEFENDANT:  Yes, your Honor.

23           THE COURT:  -- on the date you said?

24           THE DEFENDANT:  Yes, your Honor.

25           THE COURT:  All right.

1        And you understood by kicking someone when they were

2   restrained, that that was wrong to do?

3            THE DEFENDANT:  Yes, your Honor.

4            THE COURT:  All right.

5        Ms. Rothman, are there additional questions you want

6   me to ask?

7            MS. ROTHMAN:  No, your Honor.  Thank you.

8            THE COURT:  Mr. Walden, any other questions?

9            MR. WALDEN:  The only thing I want to clarify, your

10  Honor — and I definitely don't want to get into the weeds — is

11  when you asked him whether or not he was fully restrained, my

12  understanding — and I'm not going to go into the detail of

13  this — is he was facing the arrestee, right, the arrestee was

14  sitting facing him on the ground.  His hands were behind his

15  back.  He couldn't see.  My understanding is that there's some

16  evidence that he wasn't fully restrained, that he was partially

17  cuffed, and that the officer at that time was trying to get one

18  of the cuffs on his second -- on his right wrist.

19       But, in any event, I just wanted the record to be

20  clear, because this may come up in the course of preparing for

21  sentencing, that he wasn't in a position to see the extent of

22  the cuffing that was occurring at the time.

23           THE COURT:  Well, that's likely overcomplicating

24  something, I think, for our purposes.

25           MR. WALDEN:  Okay.

1    THE COURT:  My question was simply that at the time --

2  the defendant had said that he kicked the victim in the chest,

3  and I just wanted to be clear, in light of what the government

4  had proffered, that this occurred not at a time when they were

5  sort of equally in position, but somehow the victim wouldn't

6  have been able to respond to having been kicked --

7    MR. WALDEN:  Yes, your Honor.

8    THE COURT:  -- if I can say it that way.

9    Is that correct, Mr. Genco?

10    THE DEFENDANT:  Yes, your Honor.

11    THE COURT:  So if there's more to focus on in those

12  particulars that may impact the future proceedings, we can

13  address them down the road, but for today, I have to determine

14  whether there's a sufficient allocution for purposes of

15  accepting a plea.

16    I think I have heard enough that makes me think that

17  all of the elements of Section 2402 of Title 18 have now been

18  satisfied, but I just want to reconfirm with the government, is

19  there anything further on the government's end in this regard?

20    MS. ROTHMAN:  Your Honor, I think the Court has asked

21  the defendant, and his answer was in the affirmative, that he

22  knew, by kicking a restrained individual, that was wrong.  Then

23  I think the record is clear, and I think the defendant, despite

24  the statement from Mr. Walden, has admitted that to your Honor.

25    THE COURT:  I think he's admitted it, actually, twice

1    now.

2              MS. ROTHMAN:  Thank you.

3              THE COURT:  So I think we can move on.

4              Again, just to be precise — and I always ask, to be

5    clear, all of these questions of all defendants irrespective of

6    charges — many defendants read statements when they're

7    allocuting to a plea, and I'm sure you wanted, and Mr. Walden's

8    colleague wanted, to make sure that everything was exact and

9    correct, but you really did what you've said to me just now?

10             THE DEFENDANT:  Yes, your Honor.

11             THE COURT:  Okay.

12             With respect to the plea itself, let me ask each side

13   whether there are any further questions they think need to be

14   asked on the record?

15             MS. ROTHMAN:  Your Honor, there are a few provisions

16   in the plea agreement that are unique, and I thought it might

17   be prudent to flag them at this proceeding and make sure that

18   the defendant confirms his understanding of them.

19             THE COURT:  All right.  What do you have in mind?

20             MS. ROTHMAN:  Your Honor, on page 2, the second full

21   paragraph, which begins, "The defendant agrees" --

22             THE COURT:  All right.  You want me to review that

23   with him?

24             MS. ROTHMAN:  Yes, your Honor.

25             THE COURT:  All right.

1      So, Mr. Genco, the government is telling me — and I

2 think this is correct since this is not language that's

3 typically in a plea agreement — it provides the following, and

4 I want to make sure you've reviewed this with your lawyer and

5 that you understand and agree to it, so I'm just going to read

6 it rather than something else.

7      It says the following:  "The defendant agrees as part

8 of this agreement to permanently cease and refrain from seeking

9 or obtaining law enforcement employment on behalf of any

10 federal, state, or local entity.  The defendant agrees to the

11 foregoing ban and prohibition even if the government does not

12 seek a civil judgment and decree permanently enjoining the

13 defendant from maintaining or seeking law enforcement

14 employment on behalf of any federal, state, or local entity.

15 Nonetheless, the defendant understands that the government may

16 file a civil complaint against the defendant seeking such

17 formal injunctive relief, and, in the event the government does

18 so, the defendant agrees to consent to a permanent injunction

19 barring him from maintaining or seeking law enforcement

20 employment on behalf of any federal, state, or local entity."

21      Do you understand that provision in the plea

22 agreement?  And do you agree to it?

23      THE DEFENDANT:  Yes, your Honor.

24      THE COURT:  All right.

25      What else, Ms. Rothman?

1          MS. ROTHMAN:  Thank you, your Honor.

2          There is one final provision, and that is on page 6 of

3     the agreement.  That paragraph provides, among other things,

4     that, should the defendant seek or obtain law enforcement

5     employment, that he agrees that the prosecution on counts that

6     the government intends to dismiss at sentencing, which here is

7     Count Two of the information, for obstruction, could be

8     reinstated against him, and the government could proceed on

9     that count.

10          THE COURT:  All right.

11          Rather than my repeating what Ms. Rothman has said or

12     reading the language — I think she stated that clearly — do you

13     understand that provision on page 6?  And do you agree to that

14     as well?

15          THE DEFENDANT:  Yes, your Honor.

16          THE COURT:  All right.  Very well.

17          Anything else, Ms. Rothman?

18          MS. ROTHMAN:  No, your Honor.  Thank you.

19          THE COURT:  All right.

20          Mr. Walden, are there any other questions that you

21     think I need to ask as part of this proceeding?

22          MR. WALDEN:  No, your Honor.  The only thing I want to

23     clarify is that on page 5 -- and, again, this may be in other

24     plea agreements, and I just don't remember it, I thought this

25     was one of the newer provisions that Ms. Rothman was talking

1    about with respect to *Brady*, but the Court described this as a

2    waiver.  It's not really a waiver, your Honor.  From my

3    understanding of the language, it says we're not giving it to

4    you, and you give up the right to challenge your conviction or

5    sentence if we don't give it.  It does not prevent me from

6    asking about it, and I think that there is case law that says

7    that the government retains *Brady* obligations with respect to

8    exculpatory evidence even through sentencing.

9         So I didn't need to overcomplicate this, using your

10   words, your Honor; I just want to make clear that, at least

11   from my reading of this, we retain our right to at least ask

12   the government to give us exculpatory information up through

13   sentencing.  If they choose not to do it, and the Court doesn't

14   order it, then he waives his right to challenge anything, but

15   it doesn't stop us from asking or the government agreeing or

16   the Court ordering it in an appropriate circumstance.

17        THE COURT:  Ms. Rothman, does the government have any

18   response to Mr. Walden's remark?  I'm not sure it requires

19   anything from the Court, per se, but do you have any response

20   that you think needs to be put on the record?

21        MS. ROTHMAN:  Your Honor, I would just point the Court

22   to the plain language of the plea agreement; in particular, the

23   final sentence of that paragraph, in which the defendant

24   acknowledges that he has not and will not receive such

25   information because he has decided to plead guilty, and he

N82KGENP

waives the right to this information and agrees not to withdraw

his plea or attack his conviction or sentence, either on direct

appeal or collaterally, on the grounds that the government has

failed to produce any such information.

So I think that is clear, and I think it's consistent

with perhaps how Mr. Walden has described it, but I would just

point the Court to the language of the agreement.

THE COURT:  This language, I think, unlike what we

referred to earlier, is fairly standard language in plea

agreements with the government, correct?

MS. ROTHMAN:  Yes, your Honor.

THE COURT:  Mr. Walden, are you in some way asking the

Court for any particular relief on this point, or you're just

in some way potentially reserving some right you think

hypothetically you might have?

MR. WALDEN:  Yes, sir, the latter.

THE COURT:  Okay.

Well, I think we can leave that there for now, then.

MR. WALDEN:  Thank you, Judge.

THE COURT:  Other than that, is there any reason why I

should not accept Mr. Genco's plea at this time?

MS. ROTHMAN:  No, your Honor.

MR. WALDEN:  None, your Honor.

THE COURT:  All right.

On the basis of Mr. Genco's responses to my questions

1    and my observation of his demeanor, I find that he is fully

2    competent to enter an informed plea at this time.  I also

3    conclude that he understands the nature of the charge and the

4    consequences of his plea.  Finally, I'm satisfied that his plea

5    is voluntary and that there is a factual basis for it.

6            Accordingly, the proffered plea to Count One — and I

7    should say, in particular, the lesser included offense of Count

8    One — of the information is accepted by the Court.

9            I assume the government will order a copy of the

10   transcript of this proceeding today and will submit it to the

11   Court in due course with any additional paperwork so that we'll

12   have it available in advance of the sentence in this case?

13           MS. ROTHMAN:  Yes, your Honor.

14           THE COURT:  All right.

15           And a presentence investigation report is ordered.

16           I talked to my deputy.  We have a tentative date to

17   propose for sentencing.  I need to be reminded of what that is.

18           (Pause)

19           THE COURT:  December 6th, which I believe is a

20   Wednesday, at 10:00 o'clock.  That's not Thanksgiving week, and

21   it's not the week after Thanksgiving, and it's not right before

22   Christmas, so no sentencing date is ever ideal for any

23   defendant, but we were trying to be mindful of family

24   obligations and the like for the defendant and for counsel as

25   well.

1        Does that date work for the government?

2        MS. ROTHMAN:  Yes, your Honor.

3        THE COURT:  All right.

4        Mr. Walden, does that work for you?

5        MR. WALDEN:  Yes, sir.

6        THE COURT:  All right.

7        My practice is that any submission that you all want

8   to make in advance of the sentence should be submitted no later

9   than one week before the sentence, so I have adequate time to

10  consider whatever it is that you may be submitting.

11       In any event, the prosecution case summary for

12  purposes of the presentence report should be delivered to

13  probation in the next 14 days.

14       And, Mr. Walden, you should make yourself available

15  with Mr. Genco to be interviewed by probation in the next

16  14 days or as soon thereafter as you all are able to do so.

17       MR. WALDEN:  Yes, sir.

18       THE COURT:  All right.

19       So I think we have now concluded the plea aspect of

20  this proceeding, and I think the only thing remaining for today

21  is to determine what and whether there should be bail

22  conditions to be set.

23       Before we get to that, let me just ask, in an

24  abundance of caution, does the government have anything else,

25  other than setting bail conditions, that we need to do today?

1    MS. ROTHMAN:  No, your Honor.  Thank you.

2    THE COURT:  Mr. Walden?

3    MR. WALDEN:  No, sir.

4    THE COURT:  Okay.  So now let's turn to that issue.

5    What is the government's view as to whether there are

6    bail conditions to be set, what they should be in this case?

7    MS. ROTHMAN:  Your Honor, the government believes that

8    bail conditions should be set, and those are consistent with

9    the recommendation of pretrial services, with one proposed

10   addition.  Specifically, the government would request that the

11   defendant be released on a $100,000 personal recognizance bond

12   that is cosigned by two financially responsible persons.  There

13   would be pretrial services supervision, as directed.  He shall

14   surrender all travel documents and make no new applications.

15   His travel should be restricted to the Southern District of New

16   York and the Eastern District.  He shall obtain or maintain

17   verifiable employment.  He shall not possess a firearm,

18   destructive device, or other dangerous weapon.

19   And as to the firearms that he does possess, he should

20   surrender those to a local police department or law enforcement

21   authority.

22   He shall have no contact with the victim of the

23   offense.

24   And then, finally, the one addition from the

25   government would be that he shall have no contact with any

1  potential witnesses in this matter.

2       Your Honor, we've spoken with defense counsel.  We

3  understand that there is disagreement as to some of those

4  terms.  I think earlier in the day, there was disagreement as

5  to, I think, all of those terms, but the outstanding disputes

6  seem to be the travel restriction to the Southern District of

7  New York and the Eastern District, the surrender of the

8  defendant's travel documents, the amount of the personal

9  recognizance bond, and the number of cosigners.

10       All of the government's proposals here, which are

11  consistent with pretrial, are reasonable, are as least

12  restrictive as could be in this case.

13       I've spoken with Mr. Walden prior to appearing here

14  today, and I do not understand his resistance to having what is

15  a standard condition in this district, of the defendant

16  surrendering his travel documents.  I have asked him if there

17  is a particular need for the defendant to travel outside of

18  this district or the Eastern District.  He has not given me an

19  answer.  I have asked him if there is particular international

20  travel that is planned by the defendant.  His answer was, none.

21       And I've spoken with pretrial services, and, as I

22  understand it, for them to do their job, which is to supervise

23  the defendant --

24       THE COURT:  Hold on one second.

25       I never like lawyers both standing at the same time.

1         MR. WALDEN:  Oh.

2         THE COURT:  Mr. Walden, you'll get your chance, but

3    please stay seated, and then Ms. Rothman, when she's finished,

4    must sit, and then you can stand.  But having both lawyers

5    stand at the same time is not appropriate.

6         I'm sorry to interrupt.  Go ahead.

7         MS. ROTHMAN:  That's okay, your Honor.

8         And I've spoken to pretrial services prior to this

9    court appearance, and as I understand, for them to supervise

10   the defendant reasonably and meaningfully, travel restrictions

11   are important.  I also understand that if there is a need for

12   the defendant to go somewhere outside of this district or the

13   Eastern District, all he needs to do is make that request, and

14   pretrial services, I anticipate, will approve of that request,

15   as will the government.

16        So we would submit that the proposed package and

17   restrictions here are reasonable, are as limited in terms of

18   being restrictive, to ensure appropriate pretrial supervision.

19        That's the reason, among other things, that his

20   firearms should be surrendered, so pretrial services can do

21   their job, make sure that their agents are safe when they go to

22   do home visits and check on him -- or check in on the

23   defendant.

24        I'll just note, because I suspect this may come up,

25   that it is true the defendant self-surrendered this morning,

1    and he has many years of law enforcement service.  But that is

2    often the case in situations like this, where the defendant is

3    a law enforcement officer who's being charged with a serious

4    crime.

5         This case is different in that he has now admitted to

6    a deprivation of an individual's constitutional rights under

7    color of law.  He has pled guilty.  And so pointing the Court

8    to 3143(a), there is, in a sense, a presumption of detention in

9    this case.  Now, the government is not seeking detention.  Of

10   course, the Court must consider if it can find by clear and

11   convincing evidence the defendant is not a flight risk or a

12   danger — I think the Court can make that finding here — but the

13   restrictions and package proposed by pretrial that the

14   government supports is reasonable, is limited, and is

15   appropriate.

16        And I will just point the Court to a few recent cases

17   that have been charged by this office, involving law

18   enforcement officers, where similar restrictions were imposed.

19   There's *United States v. Mario Stewart*, 23 CR 361, a case

20   before Judge Karas.  There, the defendant was released on a

21   $150,000 personal recognizance bond, with two cosigners, his

22   travel was limited to the Southern District of New York, the

23   Eastern District of New York, he surrendered his passport,

24   there was a firearm restriction imposed, and he also

25   self-surrendered.

 1          I'll point the Court to 22 CR 550, *U.S. v. Taj Everly*,

 2    a $50,000 bond, two financially responsible persons as

 3    cosigners.  That involved an assault in a prison.  Again, his

 4    travel was restricted to the Southern District and the Eastern

 5    District of New York.  His codefendant, Rosita Rossi, similar

 6    facts, she didn't even use violence — she was a supervisor who,

 7    as charged, engaged in obstruction, witness tampering — her

 8    travel was limited to the Southern District of New York, the

 9    Eastern District of New York.

10          Just last week, two supervisors at a juvenile

11    detention center were arrested and charged with violations of

12    242 for deprivation of constitutional rights and for a

13    violation of 1519 for preparing false reports.

14    Judge Figueredo, in this very courtroom, I imagine, your Honor,

15    released them on $100,000 personal recognizance bonds, two

16    financially responsible persons, and their travel was limited

17    to the Southern District and the Eastern District of New York.

18          And I will just add one more case, your Honor:  *U.S.*

19    *v. Ed Mullins*, the former head of the Sergeant Benevolent

20    Association, no violence was alleged in that case, he waived

21    indictment.  He initially pled not guilty and then pled guilty.

22    And his bail package also included a personal recognizance

23    bond, two financially responsible persons, and travel limited

24    to the Southern District and the Eastern District.

25          So that is the government's request here.  And, of

1    course, if the Court has any questions, we'll answer them, but

2    that's the package that we think is appropriate for this

3    defendant on the facts before the Court.

4            THE COURT:  The one question I have before I hear from

5    Mr. Walden is:  I'm very much adverse, in general, to

6    conditions about defendants not having contact with potential

7    witnesses, because unless you're prepared to give a list of

8    potential witnesses to Mr. Walden so that he can identify

9    specifically to his client who it is that he's not supposed to

10   have contact with, I don't know how defendants are supposed to

11   necessarily know who the government thinks their potential

12   witnesses are going to be, especially now that we've had a plea

13   proceeding, witnesses as to what?  There's not going to be a

14   trial, and who do you have in mind?

15           So I am quite adverse to a condition of that kind

16   unless the government is prepared to provide to the defendant a

17   list of potential witnesses.  So you can think about that while

18   I hear from Mr. Walden.

19           MS. ROTHMAN:  Your Honor, I can answer the Court's

20   question.

21           We will give a list of names to the defendant, as this

22   is a pre-indictment disposition.  There have been extensive

23   conversations between the government and defense counsel about

24   the government's proof in this case.  I suspect Mr. Walden

25   actually knows who these individuals are, based upon those

1    conversations, but we can provide those names.  That's not a

2    problem.

3              THE COURT:  Okay.  Can I just understand a little bit

4    more on this point?  I mean, I understand a provision like this

5    when it's prior to a trial or prior to a plea, but now we have

6    a plea that's been entered.  So the only thing that's going to

7    remain in this case is the sentencing.

8              So, the government's concerned that if we don't have a

9    condition like this, Mr. Genco is going to be in contact with

10   individuals to what end exactly?

11             MS. ROTHMAN:  Your Honor, I am hopeful that there will

12   be no need for further proceedings in advance of sentencing,

13   and so this seems like a condition that doesn't seem

14   necessarily onerous on the defendant, and ensures the integrity

15   of the statements that those individuals have made or may make.

16   To protect that testimony, we would simply request for a

17   handful of individuals — we're talking about two individuals,

18   your Honor --

19             THE COURT:  This is not the victim, but other than the

20   victim?

21             MS. ROTHMAN:  Correct, your Honor.

22             -- that the defendant not speak with them during the

23   pendency of his case until sentencing.

24             THE COURT:  But I'm just trying to understand a little

25   bit, without knowing who the two people you have in mind are,

1    what it is that he could do if he had contact with these

2    people, that in some way could impact the proceedings in this

3    case.

4              What do you have in mind in that regard?

5              MS. ROTHMAN:  Your Honor, there are sometimes

6    situations where there are *Fatico* hearings that arise in

7    advance of sentencing.  I don't anticipate that will be one

8    here, given that the parties have agreed upon the guidelines

9    and the facts.  Your Honor, perhaps it's prudent to ask if

10   Mr. Walden has an objection to this condition.  I don't know, I

11   haven't spoken to him about this one in particular yet.

12             THE COURT:  All right.  We'll deal with that in the

13   course of my discussion with Mr. Walden about all of the

14   different objections he has.  He may or may not have one to

15   this.

16             Mr. Walden, I'm happy to hear from you about what

17   conditions, if any, you're amenable to for your client and what

18   you are not and why.

19             MR. WALDEN:  Yes, sir.

20             And, your Honor, I apologize for standing earlier.  I

21   was standing because I thought that Ms. Rothman was almost

22   done, and she was starting to veer from her argument into

23   anticipating what I was going to say, and I was just surprised

24   by that.  So I apologize, Judge.

25             Judge, we're very -- and I apologize, I have to switch

1   between glasses because I can't see you and read at the same

2   time.  We're asking that Mr. Genco be released on his own

3   recognizance with no pretrial supervision whatsoever, exactly

4   as was done in a case -- I don't have all the details on it,

5   but it was a misdemeanor case, the defendant self-surrendered,

6   his name was *Russiello*.  I have the docket number from 2019.

7   I'm not setting that as precedent because it's very hard to

8   cite precedent in a situation like this that's very fact

9   specific.  Of all the circumstances that Ms. Rothman pointed

10  out with these three or four other cases, we don't know what

11  the facts are.

12          THE COURT:  Well, let me interrupt you for a second.

13          I have to say, with all respect, it's not helpful to

14  the Court to sit up here, and for the first time in the middle

15  of a bail hearing, be given 23 CR 361, 22 CR 550, some case

16  from 2019.  What am I supposed to do with that, take a recess,

17  go on the docket, and read about it?  I don't really know what

18  to do with any of that, and, to your point, bail decisions are

19  individualized decisions anyway, so I'm really uninfluenced by

20  what happened in any other case.

21          This case is unique.  This is an unusual case,

22  frankly, because it's quite rare that the defendant would enter

23  a guilty plea to a 242 charge at the same time as he's being

24  presented on it for the first time.  I don't know how that

25  cuts.  I have to think about that, and I want to hear what both

1    sides have to say.  The government is suggesting that these

2    conditions are the least restrictive ones, and your view is

3    there should be no conditions, I guess, is what you're arguing.

4    So you can tell me why you think there should be no conditions.

5          MR. WALDEN:  I'm going to, Judge.  The only reason I

6    mentioned the *Russiello* case is because Ms. Rothman mentioned

7    all these other cases, and she knew about this case because I

8    told her about it beforehand.  I understand --

9          THE COURT:  I don't know anything about that case.

10         MR. WALDEN:  I'd like to tell you about this case and

11   about Mr. Genco, your Honor, because if there was a case where

12   release on one's own recognizance were true, this is the case.

13   Mr. Genco, aside from a very short stint with his parents in

14   Queens, he's literally lived in the same community his entire

15   life.  In his 51 years, he's only had two primary addresses.

16   He's married to the same woman that he's been married to for 25

17   years, he's got two children living with him, he's got an NYPD

18   pension.  He has the overwhelming support of not only his

19   community where he lives, but the law enforcement community,

20   because all of the people that are sitting behind me are law

21   enforcement officers that serve at the federal and state level.

22   And part of the reason that they still support him is because

23   his case is extremely different than any case I've ever seen in

24   20 years against a law enforcement officer.

25         I want to unpack that a little bit, your Honor, but I

1  also want you to understand who this man is.  That crying that

2  he did at the end was totally sincere, and he felt terrible

3  about this.  I haven't seen the text message that counsel

4  referred to before — my guess is that there is more to that

5  story there — but I know that since I've met him, he was

6  remorseful, but I also understand who he is, your Honor.  And I

7  have a number of disappointments with the pretrial services

8  report that I don't need to litigate about, but one of them

9  was --

10            THE COURT:  No, you do need to litigate about them.

11  That's what we're doing right now.

12            MR. WALDEN:  I meant about the substance of it, your

13  Honor.

14            THE COURT:  For inaccuracies, you should put them on

15  the record.

16            MR. WALDEN:  I will in a second, your Honor, but the

17  idea that the pretrial service office says that he poses a

18  danger of flight because of his foreign travel, he's taken two

19  trips in his entire life, one was to Colombia for the DEA, and

20  the other one was, I think, more than 30 years ago to Canada,

21  to go to Niagara Falls to see the falls.  So that's what I'm

22  talking about, your Honor.

23            But I want you to understand who the person is that's

24  seated here in front of you because he was a law enforcement

25  officer for almost 30 years.  He wasn't an ordinary law

enforcement officer with an ordinary career.  He retired from

the NYPD after almost 28 years as a first grade detective.  He

could have easily retired at that point, and, instead, he was

persuaded to continue in law enforcement, and he became one of

the most effective tools against the fentanyl crisis.  In the

partial year of 2022, his work contributed to the seizure of

over 100 tons of fentanyl -- fentanyl-laced heroin and over

300 -- I'm sorry, I said tons, I meant kilos — 300 kilos of

cocaine.

           And during the course of his career, your Honor, he

wasn't just an extraordinarily effective officer, he was

actually a hero.  And I'm going to give you just a couple of

examples, your Honor.  It is, from my humble perspective, a

shame that this sort of proceeding occurs when I'm not sure how

much visibility the government has into who this man is.

           On 9/11, he responded to the terrorist attack site,

worked there, and worked on the pile for eight months, even

though many people knew that there were toxic consequences,

which have proven to be true.

           In Harlem, there was an armed gunman that was

threatening to become an active shooter.  He responded to that

and disarmed the individual without shooting him.

           In Brooklyn, he responded to someone in a stolen car,

who literally dragged him for more than a block, including

driving into a barrier, that caused significant damage to his

1   knee.

2           Another individual in Brooklyn pulled a gun on him and

3   pulled the trigger.  He did not overreact.  He did not shoot

4   the individual, although he clearly would have been in his

5   rights.  He disarmed the person and arrested him.

6           The list goes on and on, your Honor.  The things that

7   he did during his law enforcement career are simply

8   extraordinary.

9           In terms of the instant offense, your Honor, I don't

10  know what factors and circumstances may cause you to look at

11  him differently, but suffice it to say, your Honor, as you

12  heard from Mr. Genco, this was an extremely, extremely

13  difficult and unique situation.  If you saw the videotape, you

14  would see that at the time that Mr. Genco was trying to

15  peacefully arrest this individual, he literally jumped off a

16  fire escape, almost an entire floor down, on top of

17  Officer Genco, and almost knocked him down, and then knocked

18  past his partner, and Officer Genco did not pull his weapon,

19  although he would have been fully entitled to.  He ran after

20  and helped get the person under control with his partner.  And

21  at the time, he was suffering from the shock of that

22  circumstance, because if he had fallen off those stairs, it

23  would have done grievous injury to him, but he maintained his

24  composure enough until that last moment, and literally what he

25  has pled guilty to, your Honor, was less than a second.

1          And this dovetails with the point I've made earlier —

2     he has admitted that it's wrong, he admitted that he knew that

3     he was wrong, he's admitted that he's broken the law, but at

4     the same time, your Honor, there was a photo taken of this

5     individual immediately after that circumstance; he didn't even

6     have an injury.  There's no bruising, there's no swelling,

7     there's no redness.  And on the videotape, you can see that

8     after the kick, he barely moved.  I mean, he moved a couple of

9     inches.  He didn't even fall over.

10          THE COURT:  Why wouldn't, Mr. Walden, a condition of

11     having no contact with this victim be appropriate in these

12     circumstances?

13          MR. WALDEN:  Oh, your Honor, again, I don't know

14     exactly what the pretrial services department knows, he

15     couldn't have contact if he wanted to.  The guy ultimately pled

16     guilty for the multiple felonies that he had committed because

17     he had absconded from one fentanyl arrest, where he was part of

18     a huge distribution operation, and at the time of his arrest,

19     he was pushing more fentanyl with his pregnant girlfriend and a

20     ten-year-old child in the house.

21          So, he's now in jail.  The officer --

22          THE COURT:  You can have contact with people who are

23     in jail.

24          MR. WALDEN:  There's no problem with that condition,

25     your Honor.

1       THE COURT:  Meaning you would accept that condition?

2       MR. WALDEN:  Oh, yes, your Honor.

3       And my only point is that --

4       THE COURT:  Okay.  One down and six to go.

5       MR. WALDEN:  Well, your Honor, the pretrial services

6    department has a hard job.  What they don't need to do is to

7    supervise people that do not need supervision.

8       THE COURT:  Well, when you have a condition which is

9    as directed, that means pretrial can decide how much or how

10   little they need to supervise Mr. Genco, and they may conclude,

11   as you're suggesting, that he really doesn't need to be

12   supervised, but all this does is put in place their opportunity

13   to decide what, if any, supervision there needs to be, and they

14   may well conclude, in light of Mr. Genco's life story,

15   circumstances, professional work, et cetera, that this is a

16   defendant that they do not need to allocate any resources to.

17      But that doesn't mean the Court shouldn't, in the

18   first instance, in a case like this, with someone who's now

19   pled guilty, consider some, what I will call, modest conditions

20   here.  Really, all of these are -- I don't know if modest is

21   the right word, but if the travel should be the 48 contiguous

22   United States, so Mr. Genco and his family can take a trip

23   without having to get permission, I'm willing to entertain

24   something like that.  I don't understand why surrendering his

25   passport for the duration is problematic because you haven't

1    spoken to that, other than to tell me he's never left the

2    country anyway, so it wouldn't really matter, I wouldn't think,

3    unless, as Ms. Rothman suggested, they had plans to travel

4    outside of the country.  But that hasn't been brought to my

5    attention.  And even if that were the case, that could also be

6    addressed in the context of setting conditions.

7            I hear what you're saying.  What you're saying is,

8    this is a good man who served his country and his community

9    throughout his professional lifetime.  That's clear to me just

10   from the representation you've made.  That doesn't mean,

11   though, that there shouldn't be conditions, however modest, set

12   in a case where an individual has now pled guilty to a crime.

13   Typically, when someone does plead guilty to a crime, some

14   conditions are set.  They don't have to be exactly what's been

15   even listed here, but I don't quite understand why this is a

16   case where no conditions make sense.  And I'm happy to hear you

17   about literally every one that's been proposed, but I am

18   inclined to set some conditions conceptually here.  It doesn't

19   have to be a $100,000 bond.  If you think there's some issue

20   with two people signing the bond, we have 50 people in the room

21   here; I suspect there's some who would sign.

22           I can't imagine that's going to be arduous.  My legal

23   responsibility is to set the least restrictive set of

24   conditions, so I might not think a $100,000 bond is necessary

25   here, but I do think, in the posture of this case in which the

1   defendant has pled guilty, faces potential jail time — again,

2   that's not for today, and who knows, as I said to Mr. Genco,

3   it's anything from zero to twelve — it could be zero, it could

4   be twelve, it could be something else — I have no way of

5   knowing what that should be, and I won't know until we have a

6   presentence investigation report, a submission from the

7   government, and a submission from you on that, and that's for

8   December.  That has nothing to do with today.  Today has to do

9   with what has to happen between here and December.  That's all.

10          You can argue for ROR, but I think I should tell you,

11  I'm disinclined to that.  I'm not sure I'm going to agree with

12  everything that's listed here either.  I think there's

13  someplace in between that makes more sense, from where I sit.

14          MR. WALDEN:  And, your Honor, the last thing I want --

15  I didn't want to have this argument at all.  I begged the

16  government to please release him on his own recognizance or

17  adopt a very limited bond, so let me start with that, because

18  it will channel, maybe in a productive way, the conversation,

19  and if your Honor wants to hear further argument, I think --

20          THE COURT:  Tell me what you have in mind in that

21  regard.

22          MR. WALDEN:  What I had in mind was a $50,000 bond

23  that he and his wife signed, and that he would notify the Court

24  if he planned to travel outside the State of New York or New

25  Jersey, but that he was not restricted, he would notify without

his travel being limited. And I don't think there's a need for

him to surrender his passport, and I apologize, Judge, but I'm

a bit of a literalist, as a defense attorney should be, when

the Second Circuit says the least restrictive to assure his

appearance, right? ROR is the least restrictive term to assure

his appearance, because he's going to be here. He's known

about this investigation for over a year, first at the DA's

office and then at the Southern District. He's possessed

firearms the entire time. None of this is new, and yet, this

man, and his entire brother and sisterhood of community, have

come here to court to do what many other law enforcement

officers haven't done, even in situations where there is

horrific loss of life.

He's accepted consequences immediately. Not only has

he pled guilty, more importantly, he's given up his law

enforcement career that was his entire life's work.

So you don't need any conditions so that he will

appear. If he absconded, he would lose everything else that he

has left. And that's not even why he's here. He's here

because he believes in the justice system. He knows that he

did something wrong, and he wants to teach his children, who

are watching -- they're not watching here in the courtroom --

THE COURT: They know he's here today?

MR. WALDEN: They know he's here.

He wants them to learn the lesson, that acceptance of

1    responsibility is critical, and this is the best way that he

2    can do it.

3              THE COURT:  Okay.

4              So, what you're telling me is, you think, other than

5    ROR, he would be amenable to a $50,000 bond that Mr. Genco and

6    his wife sign, and that his travel would be limited to the

7    States of New York and New Jersey, although he would simply

8    have to notify pretrial of any travel outside of those two

9    states, and that he shouldn't surrender his passport, and

10   there's no reason for any of the other conditions that pretrial

11   has proposed, that the government has suggested?  Is that your

12   position?

13             MR. WALDEN:  Well, no, I'm sorry, Judge.  My position

14   is a little bit different, and I can go through the conditions

15   one by one.

16             THE COURT:  Okay.

17             MR. WALDEN:  And I apologize, your Honor, you were

18   speaking fast, and I was thinking, and maybe not listening as

19   carefully as I should have, but I don't think he should have to

20   surrender his travel documents.  I don't think his travel

21   should be restricted.  I think it should simply say that he

22   will notify pretrial if he's going to travel outside of the

23   State of New York or the State of New Jersey.  I don't think

24   that he should have to maintain verifiable employment because

25   that may not be something he can do at this point, because the

1   only job he's ever known is law enforcement, and he can't do

2   that anymore.  And it's not necessary; he's retired, he's a

3   retired NYPD first grade lieutenant, with a pension.  So I

4   don't even understand why that would be a condition at all.

5          There is no lawful basis, from my perspective, to have

6   him surrender his firearms.  He's got a right to those.  And

7   the fact that, in one instance, he did the wrong thing by

8   kicking this man, one time in the chest, does not imply that

9   he's somehow otherwise a danger to the community, such that

10  surrendering his firearms is necessary.

11         He doesn't care about the contact with the alleged

12  victim, so that's totally fine.

13         The witnesses, your Honor:  I share your skepticism

14  that --

15         THE COURT:  Well, Ms. Rothman says there are two

16  people, you know who they are.  Do you have any reason to think

17  that your client would need to have any contact with those two

18  people?

19         MR. WALDEN:  Need to have?  No, your Honor.  But I

20  know that they were in communication even within a short period

21  of time.  So, to your point, your Honor, least restrictive

22  means, if there is something that needs to be done, it should

23  be done, but if it doesn't need to get done, it's not our

24  burden.  They can't give you a reason why this 30-year law

25  enforcement officer is going to try to corruptly persuade

someone or retaliate against them or harass them.  That's the

circumstances in which this kind of condition should be met.

I'll tell you, your Honor, that I have been in cases

with actual, like, real bad guys, where the government hasn't

asked for that kind of a stipulation, without a basis.  And the

government has no basis to request it here, other than, in my

view, overreaching.  So I would ask you not to-- although,

honestly, he doesn't have any intention to reach out to them,

I'm fully expecting that those other two witnesses will reach

out to him, and I don't want him to be in violation of some

court order if he chooses to text them back when, inevitably,

they contact him.

THE COURT:  Okay.  All right.

Ms. Rothman, you want to be heard further?

MS. ROTHMAN:  Just very briefly.  A few points, your

Honor.

I will just note that, as part of the plea agreement,

there is a stipulation on an obstruction of justice

enhancement.  And I think that's relevant because Mr. Walden

just said there is no reason to suggest that the defendant

would do anything to influence testimony of any witness, and

you have an admission here, an agreement, that there are

enhancements that raise the guidelines range far above the cap.

So I would just point that out to the Court.

The second thing I will just say, your Honor:  I

1    listed a handful of cases when I started because those are

2    instances of law enforcement officers who had worked in law

3    enforcement for a lengthy period of time, who also had modest

4    conditions that pertained to them while they were pretrial.

5    And, yes, every individual is different, the Court should

6    consider this defendant.  I'm not particularly sure how much of

7    this defendant's heroic acts, many years ago, are relevant to

8    the question of his conditions of release today.  The question

9    is simply, pretrial has an obligation to supervise, as

10   appropriate, and it seems reasonable and modest to ensure that

11   his travel is limited to this area so they can do their job.

12           THE COURT:  Well, what reason does the government have

13   why his travel should be limited?  I don't know why, in the

14   circumstances of this case, he can't choose to go to

15   Washington, D.C. or Virginia, and that should give you or

16   pretrial any concern, and yet, what you're proposing -- I think

17   pretrial reflexively proposes certain standard conditions.

18   Number 3, travel restricted to the Southern and Eastern

19   Districts, is a reflexive typical condition in every case

20   unless there's some reason otherwise.  And then we have an

21   argument from a defense counsel saying, well, my client works

22   in New Jersey and Connecticut, so we should add the District of

23   New Jersey and the District of Connecticut.  We have those

24   conversations all the time, as you know, but in these

25   circumstances, we have a retired law enforcement official, who

1   isn't going to otherwise work, presumably, who may decide with

2   his wife, you know, in September, you know, let's go see the

3   Grand Canyon.  Why should pretrial need to be told that

4   necessarily?  What's the reason for that?

5           You're telling me how you think they need to do their

6   job, but I don't know why, in the first instance, on this

7   record, that should be required.

8           MS. ROTHMAN:  Your Honor, I would defer to pretrial

9   here, and I have no objection to the Court asking pretrial

10  services their view on this.  It seems to me that it is easier

11  to supervise somebody when there are limitations to where they

12  can go, but --

13          THE COURT:  Well, I'm sorry to interrupt, but because

14  I had something that was scheduled ten minutes ago, I have to

15  interrupt and move this along a little bit.

16          I actually think I could make the argument otherwise.

17  If we restrict his travel, and then he wants to go outside,

18  it's more of a burden for that to be done with an application

19  from Mr. Walden to the Court saying, without objection from

20  pretrial and the government, he's going to go to Virginia.  All

21  of a sudden, we have letters to the Court having to check in

22  with you and pretrial instead of he can go anywhere where he

23  wants because there's no reason he shouldn't be able to.  So I

24  think it could be as much of a burden the way you want to do it

25  and otherwise.

1        MS. HARRISON:  Your Honor, if I may?

2        THE COURT:  Yes.

3        MS. HARRISON:  Generally, we impose the standard

4   condition of travel restriction to our district.  However,

5   there have been many circumstances where we also allow the

6   defendant to travel with the permission of pretrial.  It does

7   not require a court order, it does not require him to petition

8   the Court.  He can simply just say, hey, officer such-and-such,

9   I would like to take this trip with my family outside of the

10  district --

11       THE COURT:  I understand that, but Mr. Walden's point

12  is his client shouldn't have to ask you whether he can go to

13  Virginia.  His point is he should just be able to go to

14  Virginia.

15       That's the difference, I think, he's making.  I

16  appreciate you're saying you can just give permission.  He

17  doesn't think I should set conditions, because they're not the

18  least restrictive, if he has to ask permission of pretrial to

19  go outside of New York and the Southern and Eastern Districts

20  of New York.  So that's where the disagreement lies.

21       MS. ROTHMAN:  The only other point I would just

22  mention briefly — and this is based upon a conversation I had

23  with pretrial earlier, and this relates to firearms — I think,

24  and, again, I won't speak for pretrial, but from a safety

25  perspective, at least they have told me, that for them to

N82KGENP

1    supervise, it is safer if the individual they are supervising

2    does not have firearms.  But, again, I defer --

3            THE COURT:  Well, that is not necessarily true in a

4    case where the defendant is a law enforcement officer, is it?

5            Let me ask pretrial:  Is that not a difference?

6            MS. HARRISON:  Generally, it's customary to still ask

7    the firearms --

8            THE COURT:  I'm not comfortable having this free-form

9    dialogue with pretrial.  If I need to take a recess and talk to

10   pretrial about some of these issues, I'm not going to do that

11   on the record.  That's between me and pretrial.  I'm not going

12   to have this colloquy any further.

13           If there are any points you want to make further about

14   the conditions, maybe I need to take a five-minute recess and

15   talk to pretrial about a couple of these things.

16           MS. ROTHMAN:  Your Honor, I have no further points.

17   Thank you.

18           THE COURT:  Mr. Walden, do you want to say anything

19   else?

20           MR. WALDEN:  No, your Honor.

21           THE COURT:  All right.

22           Let's take a five-minute recess, and I will sort this

23   out, and then I'll come back out.  We'll finalize things.

24           (Recess)

25           THE COURT:  I've tried to lay all the various concerns

1  raised by both the government and the defendant, and I've

2  talked to pretrial, and this is how I'm going to resolve

3  setting conditions:

4      As I indicated, I do think some conditions should be

5  set.  We do have a defendant who's now pled guilty.  It is to a

6  misdemeanor, but it's, I'll call it, a serious misdemeanor, if

7  you will; it's not a petty offense.  And I know the defendant

8  has expressed remorse, and he recognizes that he did something

9  wrong, and there are consequences, and that's important to

10  account for as well, and I do think some conditions need to be

11  set.

12      So this is what I've concluded:  We're going to have a

13  $50,000 bond, cosigned by two financially responsible persons.

14      The defendant's travel will be restricted to the

15  Continental United States, meaning all 48 states, with notice

16  to pretrial.  If, Mr. Genco, you're going to travel, you don't

17  need to get permission, you just need to tell pretrial where

18  you're going so they know.  If you want to go to Alaska or

19  Hawaii, you'll need permission, but it depends on the time of

20  year; maybe you won't want to do that.

21      In any event, that's how I'm dealing with the travel

22  issue, the so-called restriction, I'm really not restricting

23  travel.  But it's really more notice than permission, if I can

24  put it that way.  So you can travel wherever you want in the

25  Continental United States.  If you're going to travel, you have

1    to tell the assigned pretrial services officer.

2          I am going to require the surrender of all travel

3    documents and make no new applications.  As I discussed with

4    pretrial, I don't think there's a single case that I've had

5    where that isn't a condition, certainly in a case where someone

6    has pled guilty to a misdemeanor or a felony, for that matter.

7          Pretrial supervision will be as directed.

8          There will be no contact with the alleged victim

9    outside the presence of counsel.  I don't think that's

10   controversial, and may be somewhat academic.

11         Lastly, and importantly, having tried to navigate this

12   issue and discussed in some length with pretrial, this is what

13   I'm going to say about the firearm issue:  The defendant is not

14   to possess a firearm, destructive device, or other weapon in

15   his residence, and should have them removed by August 9th so

16   that at the time of the home visit that the pretrial services

17   officer conducts, there will be no firearms in the residence.

18   Once pretrial services has conducted the home visit and finds

19   everything in order, then, with pretrial services' permission,

20   any firearms — and I gather there are several, based on the

21   pretrial services report — may be brought back into the home at

22   that time.

23         So I'm not going to have some ongoing limitation in

24   that regard, and it may be entirely unnecessary, but trying to

25   address, frankly, the concerns that pretrial has in every case,

1    when there is a firearm in a residence, no matter who a

2    defendant may be, and trying to balance that with the

3    defendant's rights and the like, I think that is the way I want

4    to handle that issue.

5         So, to be clear, the defendant can be released on his

6    own signature today.  I'll call it the temporary firearms

7    removal should take place by August 9th, and the remaining

8    conditions can be met by August 16th.

9         Is there anything, Ms. Rothman, I've said that's not

10   clear from the government's standpoint?

11        MS. ROTHMAN:  I just had one question, your Honor.

12        THE COURT:  Yes.

13        MS. ROTHMAN:  With respect to the travel restriction,

14   your condition is such, that if he wants to travel outside of

15   the Continental United States, he needs to then give notice

16   to --

17        THE COURT:  And get permission from pretrial.

18        MS. ROTHMAN:  Okay.

19        THE COURT:  But travel within the Continental United

20   States is on notice rather than with permission, if I can

21   phrase it that way.

22        MS. ROTHMAN:  Understood.

23        So permission for travel beyond the Continental United

24   States and within the Continental United States, it is simply

25   notice?

1          THE COURT:  Correct.

2          MS. ROTHMAN:  Thank you, your Honor.

3          THE COURT:  Okay.

4          Mr. Walden, all clear on your end?

5          MR. WALDEN:  First of all, your Honor, thank you.

6          Secondly, just one quick clarification:  Travel means

7    travel outside some area?  Like if he goes to take his son back

8    to college in Upstate New York, I assume that's not travel?

9    Can the travel be on notice to pretrial services if he leaves

10   the State of New York?  Or you want any travel away from his

11   home?

12         THE COURT:  I think it's just easier.  It's less work

13   if we just say it's probably emailing an officer saying, I'm

14   taking my son or daughter to college today, and that's in

15   Utica, New York, or whatever it is, rather than having -- I

16   don't want to have more rules.  I'm trying to streamline this,

17   and I'm trying to, frankly, accommodate issues the government

18   raised, issues you raised, and issues pretrial raised.  So it's

19   imperfect, as we like to say in civil cases, a settlement makes

20   everyone unhappy, but settles sort of the disputes that

21   everyone has here, and I think I'm trying to balance a lot of

22   concerns.

23         Most importantly, Mr. Genco, will you follow all the

24   conditions that I have just set?

25         THE DEFENDANT:  Yes, your Honor.

1          THE COURT:  Okay.

2          And you understand that if you were to violate any of

3   those conditions, there would be consequences, and they

4   wouldn't be good?

5          THE DEFENDANT:  Yes, your Honor.

6          THE COURT:  Okay.

7          So I think we can leave that there.

8          Ms. Rothman, anything else we need to do in this case

9   for today?

10          MS. ROTHMAN:  No, your Honor.  Thank you.

11          THE COURT:  Okay.

12          Mr. Walden?

13          MR. WALDEN:  No, sir.

14          THE COURT:  All right.

15          Mr. Genco, I know this has been a hard day for you.

16   It's over.  I know you need to get on with your life.  We'll

17   see you again in December.  Please stay on the straight and

18   narrow.  I'm sure you will.

19          And I look forward to having the parties' submissions

20   so we can figure out what the right result here is as far as

21   sentencing is concerned.  It's certainly not an easy task in a

22   case like this, but the Court can only do the best it can with

23   what's presented by counsel to the Court.  So we'll see you all

24   in December.

25          Thank you, all, for coming today.  I appreciate the

1    support of everyone who came and gave support to the defendant.

2    Thank you, everyone.

3            MR. WALDEN:  Thank you, Judge.

4            (Adjourned)

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25